IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| JAMES WHITTINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV 319-082 |
| | ) |
| WARDEN ANTOINE CALDWELL; | ) |
| MRS. LINDSEY, Nurse Practitioner; | ) |
| and MRS. GORDON, Counselor, | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Johnson State Prison ("JSP") in Wrightsville, Georgia, filed this case pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's amended complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

**I.    SCREENING THE AMENDED COMPLAINT**

    **A.    BACKGROUND**

Plaintiff names the following Defendants: (1) Antoine Caldwell, Warden at JSP; (2) Mrs. Gordon, Counselor at JSP; and (3) Mrs. Lindsey, Nurse Practitioner at JSP. (Doc. no. 12, pp. 1-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

When Plaintiff arrived at the Georgia Diagnostic Classification Prison on January 22, 2019, he informed the medical department of his Hepatitis C diagnosis. (Id. at 6.) Testing on Plaintiff's blood confirmed the diagnosis. (Id.) Plaintiff transferred to the Augusta-Richmond County Correctional Institution on February 7, 2019, where the Hepatitis C diagnosis was again confirmed. (Id. at 6-7.) When Plaintiff stated he was seeking treatment, prison officials presented Plaintiff with a consent to treat form, and after Plaintiff signed the form, he transferred to JSP on February 12, 2019. (Id. at 7.)

Plaintiff's blood was tested upon his arrival at JSP, and the results again confirmed Plaintiff's Hepatitis C diagnosis. (Id.) In March of 2019, Plaintiff asked Defendant Caldwell if JSP nurses were following the Georgia Department of Corrections Standard Operating Procedure ("SOP") for prisoners with Hepatitis C, and he was told to file a grievance. (Id.) On March 17, 2019, Plaintiff transferred to Georgia State Prison for an ultrasound to determine whether any liver damage had occurred since Plaintiff's 2017 diagnosis. (Id.) On April 18, 2019, Defendant Lindsey told Plaintiff the ultrasound had not revealed any visual liver damage. (Id.) Defendant Lindsey further explained that although Plaintiff's Aspartate aminotransferase (AST) to Platelet Ratio index score had increased, his enzyme count had decreased. (Id. at 8.) Therefore, Plaintiff's treatment plan of drawing blood to monitor the Hepatitis C would continue. (Id.)

Plaintiff worries that while he is "forced to wait for [his] AST to Plat[e]let Ratio index score and enzyme count to be elevated at the same time," presumably to obtain treatment other than blood monitoring, he might develop scar tissue or cancer in his liver. (Id.) Because Hepatitis C is an unpredictable killer and he runs the risk of developing long term illnesses in ten to twenty years, he wants to receive direct acting antiviral drug treatment now rather than the regular blood monitoring protocol currently in place. (Id. at 8-9.)

Plaintiff filed a grievance about his Hepatitis C treatment on April 30, 2019, and when the grievance was rejected, he filed an appeal through his counselor, Defendant Gordon, on May 20, 2019. When the time expired for a response, Plaintiff asked Defendant Gordon about his appeal and was informed she had been instructed by an unidentified person to throw away the appeal. (Id. at 10.)

As relief, Plaintiff wants the Court to order the Georgia Department of Corrections to pay for direct acting antiviral drug treatment and if necessary, a liver transplant. (Id. at 11.) He also wants the Georgia Department of Corrections to pay for any subsequent complication or health problem related to his Hepatitis C. (Id.) He also seeks compensatory and punitive damages.

B.   DISCUSSION

1.   **Legal Standard for Screening**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (*per curiam*) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the Court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*); Haines v. Kerner, 404 U.S. 519, 520 (1972) (*per curiam*). However, this liberal construction does not mean that the Court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. No Supervisory Liability

Plaintiff fails to state a claim against Defendant Caldwell based on his supervisory position as JSP Warden. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Fla. Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013) (*per curiam*). Likewise, supervisors and employers cannot be sued under § 1983 simply on a theory of *respondeat superior*. See Kruger v. Jenne, 164 F. Supp.2d 1330, 1333-

4

34 (S.D. Fla. 2000) (citing Powell v. Shopco Laurel, Co., 678 F.2d 504 (4th Cir. 1982)) (explaining that employer which provided medical care for state inmates could not be sued under § 1983 on *respondeat superior* theory).

"Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold Defendant Caldwell liable, Plaintiff must demonstrate that either (1) he actually participated in the alleged constitutional violation, or (2) there is a causal connection between Defendant Caldwell's actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff appears to name Defendant Caldwell as a Defendant not because of his direct involvement in the events about which he complains, but by virtue of his supervisory position at JSP. (Doc. no. 12, pp. 6, 7 (identifying Warden as "their supervisor" and alleging knowledge based on an instruction to file a grievance).)

Nowhere does Plaintiff allege Defendant Caldwell was present for, or participated in, Plaintiff's medical treatment. Nor does he allege Defendant Caldwell was responsible for examining Plaintiff or making any determination about the timing or type of treatment for Plaintiff. Courts have recognized that supervisory prison officials who are not medical professionals are entitled to rely on the decisions of trained medical practitioners regarding care provided to inmates. See Williams v. Limestone Cty., Ala., 198 F. App'x 893, 897-98 (11th Cir. 2006) (*per curiam*); Rutledge v. Lift, CV 307-055, 2009 WL 2842739, at *8 (S.D. Ga. July 22, 2009) (citing Waldrop v. Evans, 681 F. Supp. 840, 848-49 (M.D. Ga. 1988)),

*report and recommendation adopted,* 2009 WL 2900276 (S.D. Ga. Sept. 3, 2009) (Bowen, J.).

Nor can Plaintiff establish this supervisory Defendant was directly involved with his medical care by alleging in conclusory fashion the warden "had acknowledgement of his subordinates making poor decisions," (doc. no. 12, p. 6), or may have seen a grievance Plaintiff filed. See Asad v. Crosby, 158 F. App'x 166, 170-72 (11th Cir. 2005) (*per curiam*) (affirming district court's dismissal of supervisory liability claims against two defendants who failed, *inter alia*, "to afford [plaintiff] relief during the grievance process," because the record failed to show that they "personally participated in the alleged constitutional violations, or that there was a causal connection between the supervisory defendants' actions and an alleged constitutional violation"); see also Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999) (refusing to impose liability under § 1983 on supervisory officials who denied administrative grievances and otherwise failed to act based on allegations contained in the grievances), *cert. denied*, 530 U.S. 1264 (2000); Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that Commissioner of Department of Corrections could be held liable for damages from any constitutional violation at a facility within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

Nor has Plaintiff alleged the requisite causal connection between Defendant Caldwell and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's

improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Plaintiff does not draw the necessary causal connection between Defendant Caldwell and any alleged constitutional violation. Plaintiff has not alleged (1) a history of widespread abuse regarding improper medical treatment at JSP, (2) an improper custom or policy put in place by Defendant Caldwell regarding medical treatment, or (3) an inference this supervisory Defendant directed prison employees to act, or knew they would act, unlawfully. At best, Plaintiff has alleged he made some sort of inquiry to Defendant Caldwell about compliance by JSP nurses with a Georgia Department of Corrections SOP, and the warden instructed him to file a grievance. Moreover, as discussed below, there are no underlying claims regarding Plaintiff's grievance or medical treatment, and therefore, no supervisory liability possible for those claims. See Dang v. Sheriff, Seminole Cty., Fla., 871 F.3d 1272, 1283 (11th Cir. 2017).

In sum, Plaintiff has not shown Defendant Caldwell actually participated in the alleged constitutional violations; nor has he drawn the necessary causal connection to any alleged constitutional violations. Therefore, Plaintiff fails to state a claim against Defendant Caldwell upon which relief may be granted.

### 3. Grievance Processing

Plaintiff alleges Defendant Gordon violated his right of access to the courts because she threw away his grievance appeal. (Doc. no. 12, p. 6.) Under Eleventh Circuit law, "an inmate has no constitutionally-protected liberty interest in access to [a prison grievance] procedure." Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (*per curiam*). Thus, any claim that Defendant Gordon, or by extension an unidentified person who allegedly instructed Defendant Gordon how to process Plaintiff's grievance, mishandled Plaintiff's grievance or improperly denied a grievance fails to state a claim upon which relief may be granted. See id.; see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.").

To the extent Plaintiff couches his claim in terms of denial of access to the courts, his allegations fail to state a claim for relief. To state a viable denial of access to the courts claim, a plaintiff must allege actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging Plaintiff's sentence or conditions of confinement. Wilson v. Blankenship, 163 F.3d 1284, 1290 (11th Cir. 1998); see also Lewis v. Casey, 518 U.S. 343, 349-55 (1996). There must be evidence of deterrence of a nonfrivolous claim "such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." Wilson, 163 F.3d at 1290-91. Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal,

8

postconviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (citation omitted).

To show actual injury, a plaintiff must show he had a legitimate claim that prison officials restricted him from pursuing. Al-Amin v. Smith, 511 F.3d 1317, 1333 (11th Cir. 2008). "[T]he very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." Christopher v. Harbury, 536 U.S. 403, 414-15 (2002). Therefore, the amended complaint must contain allegations sufficient to give fair notice of what was allegedly lost and show "that the 'arguable' nature of the underlying claim is more than hope." Id. at 416. Accordingly, "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." Christopher, 536 U.S. at 415.

Here, Plaintiff fails to provide *any* detail about actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims. If Plaintiff implies the instant litigation was somehow hampered, the fact the case was filed and is currently under consideration by the Court undercuts any claim he was prevented from pursuing his claims based on a discarded grievance appeal. Moreover, as discussed herein, Plaintiff has not identified any viable claims related to the medical issues he asserts were raised in the grievance appeal. Therefore, the Court concludes Plaintiff's amended complaint fails to state a viable denial of access to the courts claim upon which relief can be granted. See Christopher, 536 U.S. at 417-18.

### 4. Disagreement over Medical Treatment

To state a claim for deliberate indifference to a serious medical need, Plaintiff must

9

allege:  (1) he had a serious medical need – the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (*per curiam*).

To satisfy the objective component regarding a serious medical need, a prisoner must allege that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  To satisfy the subjective component that a defendant was deliberately indifferent to his serious medical need, Plaintiff must allege that person:  (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) disregarded that risk by (3) following a course of action which constituted "more than mere negligence."  Melton, 841 F.3d at 1223.

In addition, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).  The Eighth Amendment does not mandate that the medical care provided to the prisoner be "perfect, the best obtainable, or even very good."  Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991) (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)).  Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference.  Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris, 941 F.2d at 1505; see also Palazon v. Sec'y for Dep't of Corr., 361 F. App'x 88, 89 (11th Cir. 2010) (*per curiam*) (requiring more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law"

to establish deliberate indifference claim). Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).

Neither does a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. Harris, 941 F.2d at 1505; Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989); Smith v. Fla. Dep't of Corr., 375 F. App'x 905, 910 (11th Cir. 2010) (*per curiam*). That is, deliberate indifference cannot be shown simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . ."). "The question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Butler v. Prison Health Servs., Inc., 294 F. App'x 497, 499 (11th Cir. 2008) (*per curiam*) (citing Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)).

Here, Plaintiff alleges Defendant Lindsey violated his Eighth Amendment rights when she "denied him treatment" by not providing the direct acting antiviral drug treatment he wants and instead draws his blood so it can be monitored in accordance with the Georgia Department of Corrections SOP on Hepatitis C treatment. "That Hepatitis C presents a serious medical need is undisputed." Loeber v. Andem, 487 F. App'x 548, 549 (11th Cir. 2012) (*per curiam*) (citing Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). Thus, while Plaintiff has

11

established the first, objective prong of the deliberate indifference test, he cannot satisfy the remaining prongs.

> To sustain a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a Plaintiff must allege facts showing (i) an objectively serious medical need; (ii) an objectively insufficient response to that need; (iii) subjective awareness of facts signaling the need; and (iv) an actual inference of required medical treatment from those facts. See Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). An objectively insufficient response by public officials to a serious medical need must be poor enough to constitute an unnecessary and wanton infliction of pain. See Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Inadvertent failure to provide adequate medical care, negligence in diagnosis or treatment, or medical malpractice, without more, fails to state a cognizable deliberate indifference claim. Id. at 291–92, 97 S.Ct. 285.

Id. An objectively insufficient response by public officials to a serious medical need must be poor enough to constitute an unnecessary and wanton infliction of pain. Id. (citation omitted). Allegations of negligence or malpractice, without more, do not state a viable claim for deliberate indifference. Estelle, 429 U.S. at 106; Campbell, 169 F.3d at 1363-72. Nor does a mere difference in medical opinion between prison medical staff and an inmate over the course of treatment state a viable claim. See Harris, 941 F.2d at 1510; Hamm, 774 F.2d at 1575.

Plaintiff has not shown Defendant Lindsey ignored his condition or refused to provide treatment ordered by any physician. Rather, an ultrasound revealed no visible damage to Plaintiff's liver, multiple blood tests have been performed, and Plaintiff's AST to Platelet Ratio index score and enzyme count are routinely monitored, as evidenced by Plaintiff's ability to recount those changing scores. The Eleventh Circuit draws a distinction between claims "based on a 'total lack of treatment' and those based on a refusal 'to give [a plaintiff their] desired treatment.'" Greer v. Aikens, No. 418-CV-00021-CDL-MSH, 2019 WL 542980, at *4 (M.D.

Ga. Feb. 11, 2019) (citing Mitchell v. Nobles, 873 F.3d 869, 874 (11th Cir. 2017), *report and recommendation adopted*, 2019 WL 1292295 (M.D. Ga. Mar. 20, 2019) (dismissing deliberate indifference claim by Georgia prisoner with Hepatitis C and cirrhosis who had been prescribed Interferon rather than the Harvoni he preferred). Even if Plaintiff could establish negligence in choosing a conservative course of treatment rather than his preferred course, his disagreement does not "support an inference that [Defendant Lindsey] acted with disregard for the harm posed to Plaintiff by Hepatitis C." Loeber, 487 F. App'x at 549.

Moreover, Plaintiff has not alleged any specific deterioration in his condition since entering the prison system. While Plaintiff recounts general information from studies about different types of potential harm resulting from Hepatitis C "after ten to twenty years," (doc. no. 12, p. 8), and the efficacy of certain treatment, he has not alleged any resultant harm particular to his situation. Indeed, Plaintiff does not allege any physician, either before or after he entered the prison system in 2019, has ordered treatment beyond the monitoring program currently in place. See Black v. Ala. Dept. of Corr., 578 F. App'x 794, 796 (11th Cir. 2014) (*per curiam*) (rejecting deliberate indifference clam where prisoner with Hepatitis C was stable and experienced no negative health consequences from routine monitoring of lab results showing acceptable liver function and enzyme tests); see also Loadholt v. Moore, 844 F. Supp.2d 1274, 1282-83 (S.D. Ga. 2012) (dismissing deliberate indifference claim where prisoner's Hepatitis C had been monitored for nearly a decade, one doctor recommended treatment based on blood work, and subsequent doctor rejected treatment recommendation based on biopsy). Plaintiff's preference that Defendant Lindsey provide him with different or more extensive treatment now for his Hepatitis C, to prevent future problems that may arise but have not currently manifested, forms no basis for a constitutional claim of deliberate indifference.

## II.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's amended complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 4th day of March, 2020, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA